IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMAL JOSEPH,                        §
                                     §
          Plaintiff,                 §
                                     §
v.                                   §        CIVIL ACTION NO. 06-0405
                                     §
MARINE MANAGEMENT CONTRACTORS,       §
INC.,[1] et al.,                     §
                                     §
          Defendants.                §

## MEMORANDUM OPINION

Pending before the court[2] is Defendants' motion for summary judgment (Docket Entry No. 71).  The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **DENIES** Defendants' motion for summary judgment.

## I.  Case Background

Plaintiff Joseph Jamal ("Plaintiff") filed this admiralty suit pursuant to Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333 with an action arising out of injuries he allegedly sustained on April 8, 2005.  The incident occurred while working on the M/V PECOS HORIZON, a vessel owned and operated by Defendants Horizon Vessels, Inc., and Horizon Offshore Contractors ("Defendants" or

---

[1]    Defendant Marine Management, Inc., was terminated as a party to this action on June 6, 2007.  Agreed Motion to Dismiss Marine Management Contractors, Inc., Docket Entry No. 82.

[2]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 83.

"Horizon," collectively).  Plaintiff's complaint alleged negligence and breach of the warranty of seaworthiness under the Jones Act, 46 U.S.C. § 688.[3]   As a result of his injuries, Plaintiff seeks $750,000 in damages.

At the time of the incident, Plaintiff had worked for Marine Management Contractors ("Marine Management") as a "galleyhand" for approximately eight months.[4]  Marine Management employs a sea-based catering crew hired by vessels to perform all onboard cooking, cleaning, and housekeeping tasks.[5]  Employees generally work in the cooler storage area, galley, freezer, living quarters, bathrooms, and common/recreational areas.[6]   Plaintiff's duties included working in the kitchen, getting food out of the freezer, prepping food, cleaning tables and dishes, taking out trash, mopping, sweeping, making beds, doing laundry, and performing general housekeeping and maintenance tasks in the vessel's living quarters.[7]  Plaintiff regularly worked eighty-four hours a week and earned time-and-a-half overtime pay for any time over forty-eight

---

[3]     46 U.S.C. § 688 was recodified as 46 U.S.C. § 30104 on October 6, 2006.  The incident relevant to this lawsuit occurred on April 8, 2005, and the suit was commenced on February 6, 2006.

[4]     Horizon's Motion for Summary Judgment, Docket Entry No. 71, Ex. B, Deposition of Jamal Joseph, pp. 36-37, 128-29.

[5]     See id. at Ex. C, Deposition of Jonathan Simmons, p. 44; id. at Ex. E, Deposition of Art Hettinger, p. 62.

[6]     See id. at Ex. E, Deposition of Art Hettinger, p. 62.

[7]     See id.; Ex. B, Deposition of Jamal Joseph, pp. 36-37; id. at Ex. D, Deposition of Art Moncise, Jr., p. 70; Plaintiff's Opposition to Horizon Defendants' Motion for Summary Judgment, Docket Entry No. 72, Ex. A, Deposition of Jamal Joseph, pp. 36-37; id. at Ex. D, Deposition of Art Hettinger, p. 63.

hours.[8]   Marine Management directly paid Plaintiff's salary with company checks.[9]   Marine Management did not own the vessels on which their employees worked, but employees were able to make changes to their working conditions.[10]   For example, after Plaintiff's accident, Marine Management employees held a Job Safety Analysis meeting about his fall.[11]   They decided that, in the interest of work environment safety, rubber mats should be placed in the cooler, a request to which Horizon agreed.[12]

Another Marine Management employee, Allen Moncise ("Moncise"), testified that he had worked for the company for a total of four years and had been assigned to the PECOS HORIZON for approximately two continuous years.[13]   Marine Management later assigned him to another vessel for about two months.[14]   Moncise testified that he could be transferred to another barge at any time and that, hitch by hitch, he did not know to which vessel he would be assigned.[15]

---

[8]     Horizon's Motion for Summary Judgment, Docket Entry No. 71, Ex. B, Deposition of Jamal Joseph, p. 40.

[9]     Id. at 43.

[10]     See, e.g., Plaintiff's Opposition Motion to Horizon Defendants' Motion for Summary Judgment, Docket Entry No. 72, Ex. C, Deposition of Jonathan Simmons, p. 22.

[11]     Id.

[12]     Id.

[13]     Horizon's Motion for Summary Judgment, Docket Entry No. 71, Ex. D, Deposition of Allen Moncise, p. 63.

[14]     Id. at 64.

[15]     Id. at 64-65.

3

Although Marine Management was his employer, he stated that the PECOS HORIZON had become "more like my home" and that "PECOS treat[s] me like family."[16]   The PECOS HORIZON would "always" request his services.[17]   However, Moncise never knew when he would be transferred to another vessel, and, when he received a different assignment, he would follow orders and go because Marine Management was his employer.[18]   He also testified that other Marine Management employees, including Plaintiff, were subject to being transferred to other boats.[19]

Plaintiff worked on two barges since beginning work with Marine Management eight months before the incident, but he could not recall the name or the owner of either one, including the barge on which he was injured, the PECOS HORIZON.[20]   Plaintiff testified that he never did "any work on land for Marine Management" and that all his work was offshore on one of two barges.[21]   The first barge Plaintiff worked on performed offshore oilfield work in the Gulf of Mexico, off the coast of Louisiana.[22]  He worked with that first barge for two-to-three months continually, working twenty-one days

---

[16]   Id. at 66.

[17]   Id. at 67.

[18]   Id.

[19]   Id. at 67-68.

[20]   Id. at Ex. B, Deposition of Jamal Joseph, pp. 40, 128-29.

[21]   Id. at 128.

[22]   Id. at 41-42.

on-duty ("one hitch") and fourteen days off-duty.[23]   Marine
Management eventually moved Plaintiff to a second barge, the PECOS
HORIZON.[24]  Plaintiff continued his work as a galleyhand and was ten
days into his second twenty-one-day hitch when the incident
occurred.[25]

        Defendants filed a motion for summary judgment on April 16,
2007 regarding Plaintiff's status as a seaman under the Jones Act.[26]
The court now addresses this motion and all associated responses.

## II.  Standard of Review and Applicable Law

### A.  Standard of Review

        Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56; Celotex Corp. v. Caltrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.
2003).  A material fact is a fact that is identified by applicable
substantive law as critical to the outcome of the suit.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th

---

        [23]    Id. at 42; Plaintiff's Opposition to Horizon Defendants' Motion for
Summary Judgment, Docket Entry No. 72, Ex. A, Deposition of Jamal Joseph, p. 42.

        [24]    Plaintiff's Opposition to Horizon Defendants' Motion for Summary
Judgment, Docket Entry No. 72, Ex. A, Deposition of Jamal Joseph, p. 44.

        [25]    Id. at 44; Horizon's Motion for Summary Judgment, Docket Entry No.
71, Ex. B, Deposition of Jamal Joseph, pp. 36-37.

        [26]    See Horizon's Motion for Summary Judgment, Docket Entry No. 71.

Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).  The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the

most reasonable inference to be drawn from evidence." <u>Honore v.</u>
<u>Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some
metaphysical doubt as to the material facts." <u>Meinecke v. H & R</u>
<u>Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory
allegations, unsubstantiated assertions, improbable inferences,
unsupported speculation, or only a scintilla of evidence will not
carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>,
286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary
judgment if, after an adequate period of discovery, the nonmovant
fails "to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that party
will bear burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at
322.

**B. Applicable Law**

The Jones Act provides a cause of action in negligence for
"[a]ny seaman who shall suffer personal injury in the course of his
employment." 46 U.S.C. App. § 688(a). Under the Jones Act, seamen
have "a cause of action permitting unlimited damages against the
negligence of" their employers. <u>Becker v. Tidewater, Inc.</u>, 335
F.3d 376, 386 (5th Cir. 2003) (citing <u>Ferguson v. Moore-McCormack</u>
<u>Lines</u>, 352 U.S. 521, 522-23 (1957)); <u>see also</u> 46 U.S.C. App. §
688(a). Regardless of whether the seaman's employer owned the
vessel on which he was injured, the owner of the vessel on which he

was working may be liable for breach of the warranty of seaworthiness. <u>Becker</u>, 335 F.3d at 386 (citing <u>Parks v. Dowell Div. of Dow Chem. Corp.</u>, 712 F.2d 154, 156-58 (5th Cir. 1983)). Additionally, a seaman may sue third parties for negligence under general maritime law. <u>Becker</u>, 335 F.3d at 386 (citing <u>Usner v. Luckenbach Overseas Corp.</u>, 400 U.S. 494, 498 (1971)).

The Jones Act does not define the term "seaman," but the Supreme Court has created a two-part test to guide the courts therewith. <u>See Chandris v. Latsis</u>, 515 U.S. 347, 368 (1995). To qualify as a seaman, first, the employee's activities must contribute to the function or mission of the vessel, and, second, the employee must possess a connection to a single vessel or identifiable fleet of vessels that is substantial in both nature and duration. <u>Id.</u> The first prong of the <u>Chandris</u> test has a very low threshold requirement, only requiring that the claimant "do the ship's work." <u>Id.</u> The second prong's fundamental purpose "is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." <u>Id.</u> Seaman status most often hinges on the second prong of the inquiry. <u>Id.</u>

Furthermore, the Court articulated several guiding principles to use in interpreting its test in defining a Jones Act seaman.

8

See <u>id.</u> at 358-64.  First, the court explicitly stated that "seamen do not include land-based workers." <u>Id.</u> at 358 (quoting <u>McDermott Int'l, Inc. v. Wilander</u>, 498 U.S. 337, 348 (1991)).  Second, "Jones Act coverage . . . depends 'not on the place where the injury is inflicted . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters." <u>Id.</u> at 359-60 (quoting <u>Swanson v. Marra Bros., Inc.</u>, 328 U.S. 1, 4 (1946)).  Third, the Court stressed the importance of avoiding "engrafting upon the statutory classification of a seaman a judicial gloss so protean, elusive, or arbitrary as to permit a worker to walk into and out of coverage in the course of his regular duties." <u>Id.</u> at 362 (quoting <u>Barrett v. Chevron, U.S.A., Inc.</u>, 781 F.2d 1067, 1075 (5th Cir. 1986) (en banc)).  In other words, the Court has tried to prevent the definition of "seaman" from allowing a worker to "oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured." <u>Id.</u> at 363 (quoting <u>Reeves v. Mobile Dredging & Pumping Co.</u>, 26 F.3d 1247, 1256 (3rd Cir. 1994)).  Finally, the Court emphasized the importance of preserving the interests of both maritime employees and employers "in being able to predict who will be covered by the Jones Act . . . before a particular work day begins." <u>Id.</u>

Two Supreme Court cases in tandem flesh out the "seaman" test.

9

The Court in <u>Wilander</u> discussed the types of activities a vessel's employee had to perform to be a seaman under the Jones Act.[27]  <u>See</u> <u>Wilander</u>, 498 U.S. at 343-56.  In <u>Chandris</u>, the Court clarified the relationship that an employee had to have to the vessel, regardless of the specific tasks he performed.[28]  <u>See Chandris</u>, 515 U.S. at 358-72.  In so doing, the Court rejected a "voyage test" and instead focused on a status-based standard that does not take into account the exact job the employee was performing at the time of his injury.  <u>Id.</u> at 358.  "The total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon."  <u>Id.</u> at 370 (quoting <u>Wallace v. Oceaneering Int'l</u>, 727 F.2d 427, 432 (5th Cir. 1984)).  The Court continued by stating:

> The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the *ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on a vessel at a given time.*

<u>Id.</u> (emphasis added).  The Fifth Circuit has issued a thirty percent rule, subsequently adopted by the Supreme Court in <u>Chandris</u>, under which a maritime worker must prove the substantial

---

[27]     Prong One of the Supreme Court's "seaman" test.  <u>Chandris</u>, 515 U.S. at 368.

[28]     Prong Two of the Supreme Court's "seaman" test.  <u>Chandris</u>, 515 U.S. at 368.

nature of his connection to the vessel by spending thirty percent or more of his time in service of the vessel. <u>See</u> <u>Chandris</u>, 515 U.S. at 367; <u>Roberts v. Cardinal Servs., Inc.</u>, 266 F.3d 368, 375 (5th Cir. 2001). "Since <u>Barrett</u>, the Fifth Circuit consistently has analyzed the problem in terms of the percentage of work performed on vessels for the employer in question -- and has declined to find seaman status where the employee spent less than 30 percent of his time aboard ship." <u>Chandris</u>, 515 U.S. at 367 (citing <u>Palmer v. Fayard Moving & Transp. Corp.</u>, 930 F.2d 437, 439 (5th Cir. 1991); <u>Lormand v. Superior Oil Co.</u>, 845 F.2d 536, 541 (5th Cir. 1987)).

Determination of seaman status under the Jones Act is a mixed question of law and fact and should generally be left to the jury. <u>See</u> <u>Harbor Tug & Barge Co. v. Papai</u>, 520 U.S. 548, 554 (1997). "If reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of the crew,' it is a question for the jury." <u>Chandris</u>, 515 U.S. at 369 (citing <u>Wilander</u>, 498 U.S. at 356). Therefore, summary judgment is appropriate when the law and undisputed material facts support only one reasonable inference. <u>See</u> <u>Wilander</u>, 498 U.S. at 356. However, "because statutory terms are at issue, their interpretation is a question of law and it is the court's duty to define the appropriate standard." <u>Chandris</u>, 515 U.S. at 369 (citing <u>Wilander</u>, 498 U.S. at 356). In making their determination as to whether a maritime worker has a substantial "employment-related connection to

a vessel in navigation," the jury must be allowed "to consider all relevant circumstances bearing on" the Chandris test. Chandris, 515 U.S. at 369. The burden of proof rests on the plaintiff in establishing whether he qualifies as a seaman. See Becker, 335 F.3d at 390.

### III. Analysis

### A. Whether Plaintiff Is a Seaman Under the Jones Act

The parties do not contest that Plaintiff successfully meets the requirements of the first prong of the Chandris test.[29] Cf. Chandris, 515 U.S. at 368. The first prong of the test only requires that the claimant "do the ship's work." Id. Plaintiff's galleyhand work, with its attendant duties of kitchen maintenance and general housekeeping "contribut[ed] to the function of the vessel or to the accomplishment of its mission." See Wilander, 498 U.S. at 355 (citing Offshore Co. v. Robison, 266 F.2d 769, 779 (5th Cir. 1959)) (finding a paint foreman on a "paint boat" met this standard). The court therefore agrees that Plaintiff successfully passes Prong One of the Supreme Court's test.

To pass the second prong of the test, Plaintiff must have a connection to a vessel, or identifiable fleet of vessels, in navigation that is permanent or substantial in terms of both its duration and nature. See Chandris, 515 U.S. at 368. The parties

---

[29]    Plaintiff's Opposition to Horizon Defendants' Motion for Summary Judgment, Docket Entry No. 72, p. 6.; Defendant's Reply to Plaintiff's Opposition to Their Motion for Summary Judgment, Docket Entry No. 74, p. 2.

agree that Plaintiff was not permanently attached to the PECOS HORIZON and that the PECOS HORIZON was a vessel in navigation.[30] The controversy arises as to whether Plaintiff's connection to a vessel or an identifiable fleet of vessels was substantial enough in duration and nature to pass the <u>Chandris</u> test.[31]  <u>See</u> <u>Chandris</u>, 515 U.S. at 368.  Two dispositive issues, therefore, remain in contention: 1) whether Plaintiff was substantially connected to the PECOS HORIZON; and 2) whether there is an identifiable fleet of vessels with which Plaintiff was substantially connected.

<u>1.  Substantial Connection to the PECOS HORIZON</u>

The Supreme Court in <u>Harbor Tug</u> framed the substantial connection element in terms of whether the worker goes to sea:

> For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea.  This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be

---

[30]     Defendants' Motion for Summary Judgment, Docket Entry No. 71, p. 3-4; Plaintiff's Opposition to Horizon Defendants' Motion for Summary Judgment, Docket Entry No. 72, p. 1, 7; Defendants' Reply to Plaintiff's Opposition to Their Motion for Summary Judgment, Docket Entry No. 74, p. 2-3.

[31]     Plaintiff's Opposition to Horizon Defendants' Motion for Summary Judgment, Docket Entry No. 71, p. 6-7; Defendants' Reply to Plaintiff's Opposition to Their Motion for Summary Judgment, Docket Entry No. 71, p. 3. Defendants succinctly state that their:

> argument against seaman status is simple and straightforward.  The Horizon Defendants contend that Plaintiff did not possess a permanent or substantial connection to a vessel or a fleet of vessels in navigation when he was injured on April 8, 2005.  While the Horizon Defendants concede that Plaintiff had a relationship with the PECOS HORIZON . . . , the strength of Plaintiff's connection is not strong enough to justify a finding of seaman status.

<u>Id.</u>

helpful in distinguishing land-based from sea-based
employees.

Harbor Tug, 520 U.S. at 555.   Therefore, the analysis concerning
Plaintiff's seaman status should be framed in terms of a) whether
the nature of Plaintiff's duties is sea-based, and b) whether the
duration of Plaintiff's sea-based assignment with the PECOS HORIZON
is substantial enough to qualify him as a seaman.

        a.  Substantial Nature

        To be a seaman, the nature of the maritime worker's duties
must "take him to sea."  In re Endeavor Marine Inc., 234 F.3d 287,
291 (5th Cir. 2000).  In other words, his connection to the vessel
through his duties must be sea-based, not land-based.  See Becker,
335 F.3d at 388 (citing Chandris, 515 U.S. at 368).  The issue in
Harbor Tug revolved around the distinction between land- and sea-
based workers.  See Harbor Tug, 520 U.S. at 550.  In that case, the
plaintiff's discrete jobs generally consisted of a few days' work
for a variety of employers.  See id. at 551.  None of the work for
which he had been temporarily hired by the defendant tug boat owner
was of a sea-going nature.  Id. at 559.

        The Court stated that it mattered whether a maritime worker's
duties took him to sea because the Jones Act extends only to those
employees "who face regular exposure to the perils of the sea."
Id. at 560 (emphasis added).  In general, the employee must work at
least thirty percent of his time in the service of a vessel to
satisfy this portion of the seaman test.  Id. at 377.  The Court

14

concluded that the plaintiff in Harbor Tug was therefore not a seaman. Id. at 560.

"A maritime worker who spends only a small fraction of his working time onboard a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are." Nunez v. B&B Dredging, Inc., 288 F.3d 271, 276 (5th Cir. 2002) (quoting Chandris, 515 U.S. at 371).  The amount of time the employee spends aboard the vessel in navigation is helpful, though not dispositive, in determining seaman status.  See Roberts v. Cardinal Services, Inc., 266 F.3d 368, 375 (5th Cir. 2001).

The Fifth Circuit granted seaman status to a plaintiff in In re Endeavor.  234 F.3d at 291-92.  That case involved a crane operator who worked one-hundred percent of his time upon a barge, although he worked only when the vessel was moored or in the process of mooring.  Id. at 291-92.  The nature of his work required that he be aboard the vessel, operating its crane, for him to fulfill his duties as a cargo mover, and he was therefore determined to be a seaman.  Id. at 292.

Conversely, in Roberts, the plaintiff spent less than thirty percent of his time in the service of a fleet of vessels and was therefore denied coverage under the Jones Act.  Roberts, 266 F.3d at 377.  Although he neared the thirty-percent threshold, his occupation as a plug-and-abandon oil and gas well worker was "an art developed in land work and transposed to the maritime setting."

Id. at 378 (quoting prior cases).  This meant he could not "qualify
as a seaman without showing the requisite degree of temporal
connection."  Id.

In the instant case, Plaintiff's employment is of a
substantial sea-based nature.  Like the plaintiff in In re
Endeavor, Plaintiff worked all of his time aboard a vessel in
navigation, exposed to the perils of the sea.[32]  See In re Endeavor,
234 F.3d at 291-92.  Plaintiff at no time performed, or was
expected to perform, any land-based work throughout his time with
either Marine Management or Horizon.[33]  Not only did Plaintiff spend
all of his working time aboard the PECOS HORIZON, he lived aboard
it for weeks at a time, at sea, away from shore.[34]  Plaintiff spent
one-hundred percent of his work time in service of the vessel to
which he was assigned for three-week periods.[35]  Plaintiff is simply
not a land-based employee.  Plaintiff, therefore, satisfies the
substantial nature portion of the Chandris test.  See Chandris, 515
U.S. at 368.

   b.  Substantial Duration

To be a seaman under the Jones Act, the duration of the

---

[32]   See Horizon's Motion for Summary Judgment, Docket Entry No. 71, Ex.
B, Deposition of Jamal Joseph, p. 128.

[33]   See id.

[34]   See id. at 36-37, 42, 128; Plaintiff's Opposition to Horizon
Defendants' Motion for Summary Judgment, Docket Entry No. 72, Ex. A, Deposition
of Jamal Joseph, pp. 42, 44.

[35]   See id.

maritime worker's assignment to a vessel must be substantial.  <u>See</u> <u>Chandris</u>, 515 U.S. at 368.  Permanent assignment to a vessel, however, is not dispositive.  <u>See, e.g.,</u> <u>Nunez</u>, 288 F.3d at 277. In <u>Nunez</u>, seaman status was denied to a plaintiff who, although permanently assigned to a dredge, only spent about ten percent of his work time aboard the vessel.  <u>See</u> <u>id.</u> at 274, 277.

Similarly, mere association with a vessel while assigned to a sea-based job is inadequate.  <u>See, e.g.,</u> <u>Hufnagel v. Omega Serv. Indus., Inc.</u>, 182 F.3d 340 (5th Cir. 1999).  In <u>Hufnagel</u>, the plaintiff worked as a rigger employed by an oilfield service company to repair pilings located on fixed offshore platforms.  <u>Id.</u> at 344.  Although he sometimes slept on vessels while performing his short-term services on various platforms, he 1) was never permanently assigned to any vessel, 2) never had any duties relating to the maintenance, custody, or operation of any vessel, and 3) was never under the direction or control of the owner or crew of the vessel.  <u>Id.</u> at 345-47.  The plaintiff was consequently denied seaman status.  <u>Id.</u> at 348.

In a similar case, a plug-and-abandon helper, whose work involved the decommissioning of offshore oil wells, was not assigned as a crew member to any vessel or identifiable group of vessels, though he did sleep on a particular vessel when off-duty. <u>St. Romain v. Indus. Fabrication & Repair Serv., Inc.</u>, 203 F.3d 376, 378-79 (5th Cir. 2000).  This plaintiff was denied coverage

under the Jones Act because he could not show he performed any duties regarding the navigation, management, maintenance, or custody of the vessel or vessels at issue.  Id. at 379.

An assignment need not be permanent to satisfy the duration element of the Chandris test.  See Chandris, 515 U.S. at 371-372; see, e.g., Manuel v. P.A.W. Drilling & Well Serv., Inc., 135 F.3d 344, 352 (5th Cir. 1998).  In Manuel, the Fifth Circuit focused on a rig worker who spent two months working on a particular rig before his injury.  Id. at 346.  The defendant argued that the plaintiff, Manuel, did not have the required substantial connection because "the possibility that Manuel could have been assigned to other work locations render[ed] his assignment to Rig 3 less than permanent."  Id. at 352.  The court refused to accept this argument in light of the Supreme Court's statements that "the adequacy of the plaintiff's connection to a vessel is properly assessed on the basis of his work assignment at the time of his injury," and that "such a person should not be denied seaman status if injured shortly after reassignment" to a vessel.  Id. (quoting Chandris, 515 U.S. at 372).

The Fifth Circuit succinctly analyzed the issue by stating:

At the time of his injury, Manuel was assigned to work aboard a vessel in navigation.  The fact that Manuel was subject to reassignment by [the defendant] at some later time is of no moment. . . .  Manuel's basic assignment never changed; he remained assigned to Rig 3 for the entire two months leading up to his injury.  Therefore, we conclude that Manuel satisfies Chandris' two-prong test for seaman status as a matter of law.

18

Id.  In other words, "an employer's claim that an employee could have been assigned to other work locations [in the future] does not preclude that employee's seaman status."  Becker, 335 F.3d at 392 (quoting Manuel, 135 F.3d at 352) (internal quotation marks omitted).  Additionally, just as the employee's future potential reassignment is unimportant, there is no need to investigate the nature of the worker's duties with prior employers for purposes of the two-prong seaman test.  See Chandris, 515 U.S. at 367.

Here, the evidence shows that the common employment scenario for Marine Management workers consisted of repeated hitches aboard the same vessels, with the employees subject to possible transfer between hitches.[36]  Plaintiff was in the middle of his second hitch on the PECOS HORIZON and was scheduled to complete that twenty-one day hitch when he was injured on the tenth day.[37]  He worked at sea up to eighty-four hours per week over the course of nearly two months, with the possibility, if not *probability*, of further hitches with the PECOS HORIZON.[38]  Unlike the plaintiffs in St. Romain and Hufnagel, Plaintiff was assigned as a crew member to his vessel, the PECOS HORIZON, and had duties relating to the

---

[36]    Horizon's Motion for Summary Judgment, Docket Entry No. 71, Ex. B, Deposition of Jamal Joseph, pp. 40, 42, 44, 128-29 ; id. at Ex. D, Deposition of Allen Moncise, pp. 63-64, 66-68; Plaintiff's Opposition to Horizon Defendants' Motion for Summary Judgment, Docket Entry No. 72, Ex. A, Deposition of Jamal Joseph, pp. 42, 44.

[37]    See id.

[38]    See Horizon's Motion for Summary Judgment, Docket Entry No. 71, Ex. B, Deposition of Jamal Joseph, p. 36-37, 40, 128.

"maintenance, custody, or operation" of the vessel, i.e., cleaning and preparatory work in the kitchen and living areas of the vessel.[39]  See St. Romain, 203 F.3d at 379; Hufnagel, 182 F.3d at 345.  Additionally, Plaintiff was subject to reassignment by his employer; he was assigned to work aboard a vessel in navigation as part of its catering crew; and he had been working aboard the PECOS HORIZON for a number of weeks in the months leading up to his injury.[40]  These facts all bear strong similarity to those before the Fifth Circuit in Manuel.  See Manuel, 135 F.3d at 352. Therefore, a reasonable jury could find Plaintiff's connection to the PECOS HORIZON to be substantial in duration in this case as well.

"If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied."  Chandris, 515 U.S. at 368-69 (quoting 1B A. Jenner, Benedict on Admiralty § 11a, pp. 2-10.1 to 2-11 (7th ed. 1994)).  Repeated hitches where the employee was exclusively furthering the mission of the vessel, where he spent one-hundred percent of his working time on the vessel, and where he slept and ate on the vessel for multiple three-week periods over

---

[39]    See id. at 36, 128-29.

[40]    See id. at 36-37; id. at Ex. C, Deposition of Jonathan Simmons, p. 44; Plaintiff's Opposition to Horizon Defendants' Motion for Summary Judgment, Docket Entry No. 72, Ex. A, Deposition of Jamal Joseph, p. 42.

the course of nearly two months raises a fact issue as to Plaintiff's seaman status under the <u>Chandris</u> test.  <u>See Chandris</u>, 515 U.S. at 368.

    2.  Substantial Connection to an Identifiable Fleet of Vessels

    The court need not consider whether Plaintiff worked for an identifiable fleet of vessels.  In <u>Harbor Tug</u>, the plaintiff was directly hired by individual employers for short-term jobs through a union hiring hall and had been specifically hired by the defendant to perform shore-based work.  <u>See Harbor Tug</u>, 520 U.S. at 551.  The Supreme Court denied seaman status because 1) the plaintiff could not show a substantial connection to the single vessel upon which he had been working, and 2) there was no unitary control or ownership connection between this and other vessels for which he had worked.  <u>Id.</u> at 559-60.  The Court specifically refused to address the question, however, of whether to grant seaman status under these same circumstances except where "the employee was hired to perform seagoing work during the employment in question, however brief."  <u>Id.</u> at 559.  In the instant case, because the court has already determined that Plaintiff may have had a substantial connection to the PECOS HORIZON as defined in <u>Chandris</u>, it need not also decide, in order to defeat summary judgment, whether the multiple vessels upon which Plaintiff worked could be deemed an identifiable fleet of vessels based on the differing circumstances of his employment with Marine Management in

order to defeat summary judgment.  See Chandris, 515 U.S. at 368.

## B.  Whether Plaintiff is a Longshoreman Under the LHWCA

Defendants next argue that Plaintiff is excluded from the Jones Act because he is properly classified as a longshoreman and may therefore only assert a third-party claim against a vessel owner under the auspices of Section 905(b) of the Longshore & Harbor Workers' Compensation Act (LHWCA).[41]  See U.S.C. § 905(b). The Supreme Court has said that the Jones Act and the LHWCA are "mutually exclusive compensation regimes."  Chandris, 515 U.S. at 355-56.  Therefore, longshoremen are excluded from coverage under the Jones Act.  Id.

Plaintiff's complaint only alleged causes of action under the Jones Act: 1) the negligent failure of Plaintiff's employers to provide him a safe place to work, and 2) breach of the warranty of seaworthiness that the vessel owners of the PECOS HORIZON owed to Plaintiff.  As Plaintiff did not plead a cause of action under the LHWCA applicable to longshoremen, Defendants' second issue is moot. The court, therefore, need not consider Defendants' arguments concerning Plaintiff's longshoreman status.

## IV.  Conclusion

Based on the foregoing, the court **DENIES** Defendant's motion for summary judgment.

---

[41]    Horizon's Motion for Summary Judgment, Docket Entry No. 71, pp. 8-9.

**SIGNED** at Houston, Texas, this 3rd day of July, 2007.

Nancy K. Johnson
United States Magistrate Judge